***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 18 August 1999, an employment relationship existed between the plaintiff-employee and defendant-employer.
3. On 18 August 1999, Travelers Insurance Company was the carrier at risk.
4. The plaintiff's average weekly wage on 18 August 1999 was sufficient to yield $560.00, the maximum weekly compensation rate for 1999.
5. Plaintiff's medicals regarding this claim are admitted into evidence as Stipulated Exhibit #2.
6. The issues to be determined are whether plaintiff sustained a compensable injury by accident on 18 August 1999 and if so, what, if any, benefits is he entitled. Also, the issue of suitable work is to be determined.
 *********** RULINGS ON EVIDENTIARY MATTERS
On 29 May 2001, defendants objected to plaintiff's use of a job description in plaintiff's contentions, labeled as Attachment C. This document is a job description for "sheet metal mechanic" received 9 June 2000. This document was not admitted into evidence and describes plaintiff's regular job. A job description for "fire watch" was admitted into evidence at the hearing as defendant's Exhibit #4. The two job descriptions give different weight limits because the two positions are different. Fire watch is a lighter duty type position. Defendants' objection is SUSTAINED.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On 18 August 1999, plaintiff was a fifty-eight year old male employed by defendant-employer as a sheet metal mechanic. Plaintiff's job duties included installation of heating and cooling duct work. This included HVAC systems that were torn out and redone. Defendant-employer is an industrial general contractor who installs heating and air conditioning systems at large industrial plants in North Carolina, Virginia, South Carolina, Tennessee and Georgia.
2. On 18 August 1999, plaintiff was working for defendant-employer at the N.C. PPG Plant in Lexington, North Carolina. This job consisted of tearing out and redoing an air filtration system. The majority of the job was duct work. On that date, plaintiff was replacing the rack, which filters air, and removing the coil. The filter rack was built out of angle iron. The plaintiff and a co-worker, Terry Jones, (called Turk) took the rack out in large sections approximately six or seven feet high and eight feet wide. The rack weighed approximately fifty pounds. As the plaintiff and Mr. Jones slid the rack, it caught on a concrete slab. The plaintiff got on the slab and jerked the rack onto the slab. At that point, plaintiff felt a sharp pain or catch in his back.
3. Plaintiff continued to finish working on that job, but his back pain became worse. Plaintiff reported the incident to his immediate supervisor on August 18, 1999. The next week he met with Gene Turner, the HVAC Supervisor, and Mike Greer, the job superintendent. They completed an accident injury report of plaintiff's injury on 18 August 1999.
4. As a result of his work-related injury on 18 August 1999, plaintiff sought medical treatment on 26 August 1999 from a nurse practitioner at Med Choice Occupational Health Minor Care in Lexington. Plaintiff gave a history of hurting his back while lifting at work on 18 August 1999. Plaintiff was diagnosed with thoracic strain and received pain medication, muscle relaxer, and anti-inflammatory medication.
5. As a result of his 18 August 1999 work-related injury, plaintiff was restricted to lifting not greater than 10 pounds and no overhead climbing effective 26 August 1999. Plaintiff returned to work on light duty.
6. On 1 September 2000, plaintiff sought follow-up treatment at the same office, different physician. At that time his back pain had improved. Plaintiff was to continue his medications and continue working light duty, same restrictions. Dr. McKenzie diagnosed plaintiff with acute mechanical thoracic strain superimposed on probable compression fractures T6 and T7.
7. Approximately five years prior, plaintiff had sustained a compression fracture at T8. Films from 1996 reveal no problems with T6 and T7, only T8. Plaintiff recovered from this fracture after two to three months rest and resumed working his normal duties. Since 1996, plaintiff would occasionally take Darvocet for pain.
8. As a result of plaintiff's 18 August 1999 work-related injury, Plaintiff treated with Dr. McKenzie until 20 October 1999. By that time plaintiff's pain had improved fifty percent (50%). Dr. McKenzie kept plaintiff on light duty and recommended an orthopaedic evaluation.
9. Plaintiff sought treatment from Dr. Karl Bolstad of Lexington Orthopaedics on 28 October 1999. A bone scan performed 7 December 1999 showed abnormal activities involving the T7 or T8 vertebral body consistent with fracture. Dr. Bolstad kept plaintiff on light duty, restricted lifting to ten pounds and no climbing over eight feet.
10. The job at PPG-Lexington began to wind down near the end of 1999. Plaintiff requested a "lay-off" which was customarily done in the industry. Defendant refused since plaintiff was still on light duty. Defendant transferred plaintiff to the Alcoa-Baden site at the end of 1999.
11. While at Alcoa-Baden, plaintiff initially performed fire-watch duties since employees welded with open flames. He carried fire extinguishers weighing approximately thirty pounds. Plaintiff also did some sweeping as needed. Plaintiff could only work forty hours on light duty, but the other employees put in fifty hours per week. Plaintiff also got welding rods and did little things to help out.
12. After performing these duties for a few weeks, plaintiff was sent to the old part of the plant to sweep up accumulated dust from aluminum ore. The dust was approximately ten inches deep, and plaintiff had to shovel it into hoppers. Although plaintiff received a respirator to wear, he developed a severe cough and sought medical treatment from Dr. Moomaw on 11 February 2000. Dr. Moomaw diagnosed bronchitis with possible reactive airway component.
13. Plaintiff's cough cleared up a few days later when he was moved from the old part of the plant back to the new. Several of plaintiff's co-workers received lay-offs, and defendant-employer's job at the Alcoa Plant at Baden was winding down.
14. On 16 February 2000, plaintiff's supervisor assigned plaintiff a task to complete back in the old, dusty part of the plant. This task consisted of cleaning and painting a large duct approximately twelve feet in the air, using an eight foot ladder. This ladder weighed approximately thirty pounds. Plaintiff informed his supervisors this task was beyond his restrictions and the dusty area bothered him. Plaintiff was then assigned to paint some duct work at ground level.
15. When plaintiff failed to paint the elevated duct work, defendant-employer informed plaintiff there was nothing else for him to do. Plaintiff's last day of work with defendant-employer was 17 February 2000.
16. Plaintiff made several requests for light duty from defendant-employer. By letter of 9 August 2000, defendant-employer informed plaintiff to report to work at a job site in Albany, Georgia on 21 August 2000. Plaintiff did not report because it would take him between eight to ten hours one way to reach Albany. Plaintiff experienced back pain when traveling and had to stop every fifty (50) miles when he worked in Baden. Baden was about 130 miles from plaintiff's home. Plaintiff also experienced difficulty turning his head to look back over his shoulder while driving.
17. Plaintiff was justified in refusing defendant-employer's offer of employment in Albany, Georgia. Defendant-employer's number of employees ranged from 400 to 1,200 spread among 10 to 25 different job sites. The Albany site is the farthest away.
18. Plaintiff's last visit of record to Dr. Bolstad was 2 March 2000. At that time plaintiff still had some pain, but it had improved. Dr. Bolstad ordered plaintiff to return as needed. During February 2000 plaintiff received rehabilitative therapy. Plaintiff improved with therapy but failed to return after his 17 February 2000 visit.
19. There is no evidence of any employment by plaintiff after 17 February 2000. Since February 2000 plaintiff has primarily tried to get his back better and has not engaged in an active job search. Plaintiff has not received unemployment benefits.
20. Plaintiff is in need of medical treatment and a current evaluation to determine the restrictions, under which, plaintiff is able to work. Plaintiff may benefit from vocational assistance if approved by a physician.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 18 August 1999, plaintiff sustained a compensable injury to his back arising out of and in the course of his employment with defendant-employer. G.S. § 97-2(6).
2. As a result of this compensable injury, plaintiff is entitled to temporary total disability from 18 February 2000 and continuing until further Order of the Commission at his compensation rate of $560.00 per week. G.S. § 97-29.
3. Plaintiff is entitled to have the defendants provide all medical treatment arising out of plaintiff's compensable injury to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. Plaintiff is in need of a current medical evaluation of his condition. G.S. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff temporary total disability benefits at the compensation rate of $560.00 per week from 18 February 2000 and continuing until further Order of the Commission. Those amounts which have accrued shall be payable in a lump sum.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury on 18 August 1999 when bills for same shall have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedures.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded plaintiff in Paragraph 1 of this AWARD is hereby approved to be deducted from the lump due plaintiff and payable directly to plaintiff's counsel. Thereafter, plaintiff's counsel shall receive every fourth compensation check payable directly to plaintiff's counsel.
 ORDER
Defendants shall set up an appointment for plaintiff to be examined by Dr. Bolstad, or another physician both parties agree upon, for purpose of determining plaintiff's medical treatment needs, work restrictions, and suitability for vocational rehabilitation. This appointment should be scheduled as soon as reasonably possible, but not later than, 60 days.
This the ___ day of July, 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER
DCS/bjp